**TO: Clerk's Office**
**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

**APPLICATION FOR LEAVE**
**TO FILE DOCUMENT UNDER SEAL**

*********************************
UNITED STATES

v.

OCTAVIA NAPIER                          24-MI-434
                                        Docket Number

*********************************

SUBMITTED BY: Plaintiff ___ Defendant ___ DOJ ✓
Name: Philip Pilmar
Firm Name: USAO EDNY
Address: 271 Cadman Plaza E
         Brooklyn, NY 11201
Phone Number: 718-254-6106
E-Mail Address: philip.pilmar@usdoj.gov

INDICATE UPON THE PUBLIC DOCKET SHEET: YES ___ NO ✓
If yes, state description of document to be entered on docket sheet:

**A) If pursuant to a prior Court Order:**
Docket Number of Case in Which Entered: _____
Judge/Magistrate Judge: _____
Date Entered: _____

**B) If a new application,** the statute, regulation, or other legal basis that authorizes filing under seal

defendant at liberty

**ORDERED SEALED AND PLACED IN THE CLERK'S OFFICE, AND MAY NOT BE UNSEALED UNLESS ORDERED BY THE COURT.**

DATED:  Brooklyn                    , NEW YORK
        June 21, 2024      *Vera M. Scanlon*

**U.S. MAGISTRATE JUDGE**

RECEIVED IN CLERK'S OFFICE  June 21, 2024
                                    DATE

**MANDATORY CERTIFICATION OF SERVICE:**
**A.)** ___ A copy of this application either has been or will be promptly served upon all parties to this action, **B.)** ___ Service is excused by 31 U.S.C. 3730(b), or by the following other statute or regulation: ___ ; or **C.)** ✓ This is a criminal document submitted, and flight public safety, or security are significant concerns.
(Check one)

June 21, 2024                            *P. Pil*
DATE                                    SIGNATURE

RCH:CMP/PP/ADG
F.# 2024R00523

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - X

UNITED STATES OF AMERICA

- against -

OCTAVIA NAPIER,

              Defendant.

- - - - - - - - - - - - X

**TO BE FILED UNDER SEAL**

COMPLAINT AND AFFIDAVIT
IN SUPPORT OF ARREST
WARRANT

(T. 18, U.S.C., § 371)

24-MJ-434

EASTERN DISTRICT OF NEW YORK, SS:

        GLADYS CAMBI, being duly sworn, deposes and states that she is a Deputy Inspector General with the New York City Department of Investigation ("DOI") duly appointed according to law and acting as such.

        In or about and between February 2023 and May 2023, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant OCTAVIA NAPIER, together with others, did knowingly and intentionally conspire to use one or more facilities in interstate and foreign commerce with intent to promote, manage, establish, carry on and facilitate the promotion, management, establishment and carrying on of one or more unlawful activities, to wit: Bribe Receiving in the Third Degree, in violation of New York Penal Law Section 200.10; Bribery in the Third Degree, in violation of New York Penal Law Section 200.00; and Criminal Liability for Conduct of Another, in violation of New York Penal Law Section 20.00, and thereafter to perform acts to promote, manage, establish, carry on and facilitate the promotion, management, establishment and carrying on, of such unlawful activity, contrary to Title 18, United States Code, Section 1952(a)(3).

2

(Title 18, United States Code, Section 371).

The source of your deponent's information and the grounds for her belief are as follows:[1]

1. I am a Deputy Inspector General with DOI and have been since August 2022. I have worked at DOI since April 2013. I am currently assigned to a DOI squad that investigates misconduct affecting the juvenile detention system in New York City. During my career in law enforcement, I have received training and gained experience related to a variety of criminal activities, including the corrupt practices of public officials and other types of fraud. Based on my training and experience I am also familiar with certain common phrases for narcotics and other contraband commonly used by criminals. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses.

I. Background

2. Crossroads Juvenile Center in Brownsville, Brooklyn ("Crossroads") is a secure juvenile detention facility, which is managed by New York City's Administration for Children's Services ("ACS"), for youth who are alleged or adjudicated juvenile delinquents, juvenile offenders, or adolescent offenders, and have been remanded to secure detention. DOI and the Federal Bureau of Investigation have been investigating the smuggling of contraband, including narcotics, cellphones, and weapons, into Crossroads by ACS employees assigned to Crossroads.

---

[1] Because the purpose of this affidavit is to set forth only those facts necessary to establish probable cause to arrest, I have not described all the relevant facts and circumstances of which I am aware.

3. Approximately 120 residents, ranging from ages 14 to 20, are detained at Crossroads, and approximately 290 staff members work at the facility. ACS receives benefits in excess of $10,000 per year under various federal government programs.

4. Residents at Crossroads are prohibited from possessing any contraband, including narcotics, cellular telephones, cigarettes, weapons, and alcohol, among other prohibited items. ACS employees at Crossroads are trained to confiscate any contraband they find and must notify a supervisor if any contraband is discovered.

5. ACS prohibits Crossroads staff from offering or giving contraband or gifts to residents, receiving any gifts or money from residents or anyone associated with them, and having any unauthorized contact with residents or anyone associated with them. Crossroads staff receive training on these and other prohibitions.

6. Crossroads staff undergo a security screening when they arrive to work at the facility. Staff members' belongings are put through an X-ray machine, and all staff pass through a magnetometer (metal detector). Crossroads staff are required to put their personal cell phones and any other prohibited items in a locker prior to undergoing the security screening.

7. A significant amount of contraband has recently been recovered in Crossroads. Between approximately March 2022 and May 2024, at least 75 cell phones and more than 340 scalpels or blades were recovered from the facility, as well as narcotics and tobacco. Based on my training and experience, and the evidence gathered in this investigation, at least a portion of this contraband was smuggled into the facility by Crossroads staff, including the defendant OCTAVIA NAPIER, in exchange for bribes from the residents or their associates.

4

II.  The Defendant

8. The defendant, OCTAVIA NAPIER, was a staff member at Crossroads and was employed at the facility from June 2022 to May 2023. NAPIER was terminated in May 2023 because it appeared that she had smuggled contraband into the facility. NAPIER was a "youth development specialist," which required her to supervise residents. NAPIER's responsibilities were similar to those of a correction officer at a jail facility, except, among other differences, NAPIER and other youth development specialists may use force in narrower circumstances and do not carry pepper spray or restraints.

III.  The Defendant's Bribery Scheme

9. There is probable cause to believe that the defendant, OCTAVIA NAPIER, received money from Crossroads residents and their associates in exchange for smuggling contraband into Crossroads, and also facilitated payments for contraband for a Crossroads resident.

10. Contraband phones found by Crossroads staff show that the defendant OCTAVIA NAPIER communicated with residents in furtherance of the bribery scheme. On or about April 14, 2023, Crossroads staff recovered a contraband cell phone in the G residence hall from a resident whose identity is known to me ("Resident-1").[2] This contraband cell phone, like many others found in the facility, appears to have been shared by multiple residents. Between

---

[2] G Residence Hall is one of 10 separate resident halls at Crossroads in the same building.

5

approximately March 24, 2023, and April 13, 2023, Resident-1's contraband phone had approximately 224 communications via Instagram with NAPIER's Instagram account.[3]

11. Specifically, on or about April 9, 2023, at 12:09 p.m., an Instagram account ("Account-1") believed to be used by Resident-1 messaged the defendant OCTAVIA NAPIER's Instagram account stating, "Come in with some grabba or fronto."[4] Account-1 then placed an audio call to NAPIER's Instagram account, and afterwards sent another message stating, "When you see this bring some don't forget [i]f you really fuck with me [d]eadass." Based on my training and experience and the content of the message, I believe Resident-1 requested that NAPIER bring him contraband.

12. Between approximately April 9, 2023, and April 13, 2023, call logs show six Instagram calls between the defendant OCTAVIA NAPIER's Instagram account and Account-1. On April 13, 2023, after an Instagram audio call ended between these accounts, NAPIER sent a message to Account-1 stating, "Yes [nickname of Resident-1]."

13. Phone records for the defendant OCTAVIA NAPIER's cell phone ending in -1989 also show that NAPIER was having additional unauthorized contact with Crossroads residents.[5] From approximately March 30, 2023, to May 6, 2023, NAPIER had over 198 contacts

---

[3] Many of these communications were deleted by the account holders. However, the fact that the communications occurred can still be ascertained by the metadata recovered from the contraband phone.

[4] Based on my training and experience, I believe "grabba" means a type of tobacco and "fronto" is a type of whole leaf, dried tobacco.

[5] Records produced by T-Mobile show that the -1989 number is subscribed to by NAPIER with her true date of birth.

6

(calls or text messages) with contraband phones belonging to a resident whose identity is known to me ("Resident-2") and another Crossroads resident.

14.     Between approximately March 2023 and April 2023, the defendant OCTAVIA NAPIER received approximately four suspicious payments totaling $2,150, via her Cash App account "Tayviaaaa,"[6] from account "Slime or Slimed," a known associate of Resident-2.[7]

15.     In addition to smuggling in contraband in exchange for bribes, the defendant OCTAVIA NAPIER permitted Resident-2 to utilize her Cash App account "Bumpy Johnson" to make and receive payments for contraband and to communicate with others.  As an example, on or about April 19, 2023, a Rikers Island inmate had a recorded call with Resident-2 while Resident-2 was detained at Crossroads. The Rikers inmate asked for Resident-2's Cash App account and Resident-2 provided the "cashtag" for NAPIER's "Bumpy Johnson" Cash App account.[8]   Based on conversations recorded between the Rikers Island inmate and Resident-2, this

---

[6] Cash App records indicate that OCTAVIA NAPIER is the account holder for two Cash App accounts, one with display name "Bumpy Johnson" and one with display name "Tayviaaaa." According to Cash App, these accounts use NAPIER's date of birth and the last four digits of her Social Security number in the account information.

[7] The account holder for the Cash App account with display name "Slime or Slimed" has sent money via Cash App to another Crossroads staff member, as well as to Resident-2's girlfriend. Law enforcement intelligence indicates that the "Slime or Slimed" account holder is associated with Folk Nation gang, of which Resident-2 is known to be a part.

[8] A cashtag is a unique identifier for individuals using Cash App which is created by the account holder.

7

payment appears to be for contraband, including pills, passed between another Crossroads resident to another Rikers Island inmate at Brooklyn Supreme Court on or about April 19, 2023.

16. As another example, on or about April 14, 2023, the defendant OCTAVIA NAPIER's "Bumpy Johnson" account sent $1 to another Cash App account with the subject line, "this [Resident-2's nickname] send you number asap." Likewise, on or about April 20, 2023, the "Bumpy Johnson" account received a $20 payment with the subject line "for [Resident-2's nickname]." NAPIER's "Bumpy Johnson" Cash App account also received payments with the nickname of Resident-1 and another Crossroads resident in the subject lines. Based on my training and experience in similar cases involving the use of Cash App in contraband smuggling schemes, individuals who pay bribes to correction officers and staff members of juvenile detention facilities via Cash App sometimes put the name of the resident receiving payment, or the type of contraband they are paying for, in the subject line on Cash App so the bribe receiver or the distributor of the contraband knows why the payment was made.

17. Between approximately April 12, 2023, and May 4, 2023, Resident-2 utilized the defendant OCTAVIA NAPIER's "Bumpy Johnson" account to obtain approximately 67 payments, totaling approximately $21,946, and made approximately 19 payments, totaling $7,769. NAPIER cashed out approximately $5,680 from the "Bumpy Johnson" account. NAPIER sent approximately $1,700 of the money she cashed out of the account to an associate of Resident-2 and withdrew $3,900 from an ATM on or about April 17, 2023. In addition, NAPIER's "Tayviaaaa" account received approximately $225 of this money.

18. On or about April 23, 2023, at approximately 1:52 a.m., video surveillance showed the defendant OCTAVIA NAPIER appear to pass contraband to Crossroads residents. At

8

that time, NAPIER was on duty but was not assigned to the G residence hall. Nevertheless, video surveillance shows that NAPIER entered G residence hall, retrieved keys for the facility from another staff member, entered the staff bathroom, and then exited without locking the door behind her as is required of ACS staff. A resident whose identity is known to me ("Resident-3") then entered the staff bathroom and exited two minutes later with his arms inside his robe. Residents are not permitted to use staff bathrooms and are supposed to be in their rooms at this time of night. Resident-3 also retrieved two plastic containers and a bottle from a table in a common area (which had been left there by another staff member) and entered the cell assigned to Resident-2. Another Crossroads resident joined Resident-2 and Resident-3; the three remained in the cell for several minutes before Resident-2 and Resident-3 exited. Later that day, NAPIER's "Bumpy Johnson" account received approximately $1,700 on Cash App from multiple different users. As a result of this incident, ACS terminated NAPIER.

19. Even after her employment was terminated, NAPIER continued to send money on behalf of Resident-2. She also communicated with Resident-2 after he was transferred from Crossroads to Rikers Island. For example, on or about September 14, 2023, in a call recorded by the New York City Department of Correction, Resident-2 instructed NAPIER to send $50 via Zelle to an associate of Resident-2 and stated, "you sending money for some drugs." In that same call, Resident-2 told NAPIER, "don't worry, you're with me, you'll forever have bread [i.e., money] to spend." On or about February 28, 2024, in a recorded call, Resident-2 instructed

9

NAPIER to pick up "50 thirties" for him.[9] NAPIER asked for the location and Resident-2 stated, "Where you use to go 5 min away from that spot, 5 min from Crossroads and pick up all that shit."

20. During these calls while Resident-2 was on Rikers Island, the defendant OCTAVIA NAPIER and Resident-2 engaged in sexually explicit conversations indicating that they had an illegal sexual relationship while Resident-2 was detained at Crossroads.[10]

21. On November 20, 2023, the Honorable Peggy Kuo, United States Magistrate Judge for the Eastern District of New York, issued a warrant authorizing a search of the defendant OCTAVIA NAPIER'S iCloud account. NAPIER'S iCloud account contained six photographs of Resident-2. These photographs depict Resident-2 smoking in his cell while displaying contraband such as a knife and a cell phone. In two of the photographs, Resident-2 appears to be wearing a Crossroads employee's stab/slash vest. NAPIER never reported to ACS that Resident-2 or any other resident was in possession of contraband.

22. On April 19, 2024, the defendant OCTAVIA NAPIER voluntarily spoke to law enforcement agents. At first, NAPIER denied communicating with residents outside the facility, denied bringing in contraband, and denied knowing that Resident-2 opened a Cash App account in her name. However, once shown the relevant records, NAPIER recanted and admitted that she provided Resident-2 with her personal information so that he could open a Cash App account and that she knew Resident-2 had access to the account through a contraband cell phone

---

[9] Based on my training and experience, I believe "thirties" are prescription pills.

[10] Although Resident-2 was 20 years old at the time of this sexual relationship, any sexual activity that occurred between Resident-2 and NAPIER at Crossroads was illegal because Resident-2 was incapable of consent. See N.Y. Penal Law 130.05(3)(f) ("A person is deemed incapable of consent when he or she is . . . committed to the care and custody of a local correctional facility . . . and the actor is an employee, not married to such person, who knows or reasonably should know that such person is committed to the care and custody of such facility.").

10

he possessed in Crossroads. NAPIER also admitted that she knew Resident-2 was making money within Crossroads through selling contraband.

WHEREFORE, your deponent respectfully requests that the defendant OCTAVIA NAPIER be dealt with according to law.

I further request that the Court issue an order sealing, until further order of the Court, all papers submitted in support of this application, including the affidavit and arrest warrant. Based upon my training and experience, premature disclosure of the contents of this affidavit and related documents will seriously jeopardize the investigation, including by giving the defendant an opportunity to flee from prosecution, destroy or tamper with evidence and change patterns of behavior.

_____
Gladys Cambi
Deputy Inspector General
New York City Department of Investigation

Sworn to before me by telephone this 21st day of June, 2024

*Vera M. Scanlon*
_____
THE HONORABLE VERA M. SCANLON
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK

AO 442 (Rev. 11/11) Arrest Warrant

# UNITED STATES DISTRICT COURT
for the
Eastern District of New York

| | |
|---|---|
| United States of America<br>v.<br>OCTAVIA NAPIER<br><br>*Defendant* | )<br>)  Case No.  24-MJ-434<br>)<br>)<br>)<br>) |

## ARREST WARRANT

To:   Any authorized law enforcement officer

**YOU ARE COMMANDED** to arrest and bring before a United States magistrate judge without unnecessary delay
*(name of person to be arrested)*  Octavia Napier                                                                                              ,
who is accused of an offense or violation based on the following document filed with the court:

❒ Indictment     ❒ Superseding Indictment     ❒ Information     ❒ Superseding Information     ☑ Complaint
❒ Probation Violation Petition     ❒ Supervised Release Violation Petition     ❒ Violation Notice     ❒ Order of the Court

This offense is briefly described as follows:

   18 U.S.C. § 371 - Conspiracy to commit 18 U.S.C. § 1952

Date:   06/21/2024

                                                                                         *Vera M. Scanlon*
                                                                                         *Issuing officer's signature*

City and state:   Brooklyn, New York                                Hon. Vera M. Scanlon
                                                                                         *Printed name and title*

---

**Return**

This warrant was received on *(date)* _____ , and the person was arrested on *(date)* _____
at *(city and state)* _____.

Date:  _____
                                                                                         *Arresting officer's signature*

                                                                                         *Printed name and title*

AO 442 (Rev. 11/11) Arrest Warrant (Page 2)

**This second page contains personal identifiers provided for law-enforcement use only and therefore should not be filed in court with the executed warrant unless under seal.**

*(Not for Public Disclosure)*

Name of defendant/offender: _____

Known aliases: _____

Last known residence: _____

Prior addresses to which defendant/offender may still have ties: _____

Last known employment: _____

Last known telephone numbers: _____

Place of birth: _____

Date of birth: _____

Social Security number: _____

Height: _____   Weight: _____

Sex: _____   Race: _____

Hair: _____   Eyes: _____

Scars, tattoos, other distinguishing marks: _____

History of violence, weapons, drug use: _____

Known family, friends, and other associates *(name, relation, address, phone number)*: _____

FBI number: _____

Complete description of auto: _____

Investigative agency and address: _____

Name and telephone numbers (office and cell) of pretrial services or probation officer *(if applicable)*: _____

Date of last contact with pretrial services or probation officer *(if applicable)*: _____